IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN PERRIDON,

    Petitioner,        No. CIV S-00-1123 LKK JFM P

    vs.

ERNIE ROE, Warden, et al.,    FINDINGS AND RECOMMENDATIONS

    Respondents.

_____/

        Petitioner is a state prisoner proceeding through counsel with an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

PROCEDURAL HISTORY

        Petitioner was convicted on November 21, 1997.  On February 2, 1999, the California Court of Appeal, Third Appellate District, affirmed petitioner's conviction. (Answer, Ex. A.)  On May 12, 1999, the California Supreme Court denied his petition for review. (Answer, Ex. B.)

        On May 22, 2000, petitioner filed the instant petition raising three claims:  (1) violation of Miranda v. Arizona, 384 U.S. 436 (1966); (2) a search and seizure claim; and (3) a prosecutorial misconduct claim based on the examination of a trial witness. (Pet. at 1.) Respondents filed an answer on July 31, 2000.  (Docket No. 4.)

On June 3, 2005, petitioner filed an amended petition, which set forth the following three claims: (1) the same Miranda claim; (2) a new claim under Batson v. Kentucky, 476 U.S. 79 (1986); and (3) a new claim of ineffective assistance of appellate counsel for failing to raise the Batson claim on appeal. (Am. Pet. at 14-17.)[1] On June 3, 2005, the court granted petitioner's motion to amend and recommended that the action be stayed pending exhaustion of state remedies.[2] Respondent had opposed the motion to amend on the grounds that (1) petitioner unduly delayed raising the claims; (2) it was likely the California Supreme Court would reject them as untimely; and (3) the new claims were barred by the statute of limitations.

On July 8, 2005, respondent filed a motion for relief from the June 3, 2005 order.[3] On July 12, 2005, the district court adopted the recommendation that this action be stayed. On July 13, 2005, respondent filed a motion for reconsideration of that order.

While this action was stayed, petitioner exhausted state remedies. The state court denied relief on May 10, 2006. (See Resp.'s Response filed March 16, 2007, at 2 n.1.)

On March 21, 2007, petitioner's motion to lift the stay was granted and respondents' motions were denied without prejudice to their right to reassert the statute of limitations defense in a new motion to dismiss.

On March 23, 2007, respondents filed a motion to dismiss claims two and three. On December 13, 2007, the claims alleged as Grounds 2 and 3 in petitioner's amended petition

/////

---

[1] Petitioner abandoned the search and seizure claim and the prosecutorial misconduct claim contained in the original petition. (Am. Pet. at 18.)

[2] Relying on the Ninth Circuit decision in Felix v. Mayle, 379 F.3d 612 (9th Cir. 2004), this court held that the new claims related back to the filing of the original petition in this action and thus were not time-barred. The court found no evidence of bad faith or prejudice. (Order, filed June 3, 2005, at 2.)

[3] Respondents cited the June 23, 2005 opinion of the United States Supreme Court reversing the Circuit's decision in Felix and adopting a stringent relation back test for habeas petitions. See Mayle v. Felix, 545 U.S. 644 (2005).

were dismissed and petitioner was granted thirty days in which to file a traverse addressing the first claim of petitioner's June 3, 2005 amended petition. No traverse has been filed.

FACTS[4]

From April 13 to April 27, 1996, the [petitioner] went on a robbery spree through south Sacramento. His standard method of operation, which he used most of the time, was to enter a store, approach a cashier, calmly state that he had a gun, obtain cash in a bag and walk out of the store. He commonly used a yellow Cadillac for transportation. We give details of some of the robberies as they became relevant to the discuss, but this is a summary of the counts of which the jury found him guilty.

| Count | Date of Crime | Store | Crime |
|---|---|---|---|
| Count 1 | April 13, 1996 | Famous Footwear | Robbery |
| Count 2 | April 14, 1996 | Payless Shoes | Robbery |
| Count 4 | April 15, 1996 | Montgomery Ward | Robbery |
| Count 5 | April 16, 1996 | Mervyn's | Robbery |
| Count 6 | April 19, 1996 | Famous Footwear | Attempted Robbery |
| Count 8 | April 21, 1996 | Payless Drugs | Robbery |
| Count 9 | April 22, 1996 | Payless Drugs | Robbery |
| Count 10 | April 25, 1996 | Mervyn's | Robbery |
| Count 11 | April 26, 1996 | Sears | Robbery |
| Count 12 | April 27, 1996 | Payless Shoes | Robbery |

Count 3 (attempted robbery) was dismissed on a prosecution motion during the trial. Count 7 (robbery) was dismissed on a prosecution motion after the trial court granted a new trial on that count.

(People v. Perridon, slip op. at 2.)

/////

---

[4] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Perridon, No. C028332 (February 2, 1989), a copy of which is attached as Exhibit A to Respondent's Answer, filed July 31, 2000.

3

ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

Petitioner claims that his Fifth Amendment rights under <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602 (1966) were violated when the police ignored his invocation of his right to counsel. (Am. Pet. at 14.) When petitioner was arrested, the police told him they wanted to question him about a string of robberies, and petitioner responded: "not without no lawyer, man. Not without no cigarette." (Am. Pet. at 14.) Petitioner was given a cigarette, but not a lawyer. (<u>Id.</u>)

Respondent contends that petitioner's claims "are simply abridged versions of the claims raised in state court, without any citation to authority for the proposition that the resolution of his claims were contrary to federal law." (Answer at 29.) Respondent argues petitioner's statement was given in full compliance with <u>Miranda</u> and was voluntary. (<u>Id.</u> at 30.)

Petitioner's argument in this regard was rejected by the California Court of Appeal in a written decision on petitioner's direct appeal, and without comment by the California Supreme Court in denying the petition for review. (<u>See</u> Answer, Exs. A, B.) The California Court of Appeal recited the pertinent facts, explained the background to the claim, and its reasoning in rejecting it, as follows:

> On the morning of April 30, 1996, [petitioner] was in custody at the Sacramento County Jail on a parole violation. Detective Scott Belchamber, accompanied by Detective Chuck Provencher, visited [petitioner]. They told [petitioner] he was a suspect in several robberies and asked if he would accompany them to be interviewed. He agreed, and they went to the Sheriff's Department.
>
> When they arrived at the Sheriff's Department, the following conversation, which was videotaped, took place:
>
> "[Petitioner]: Dam[n] man.
>
> "Belchamber: Steve [petitioner], we're gonna put you over in this chair, here . . .
>
> "[Petitioner]: I need a cigarette man.
>
> "Belchamber: I'll let you smoke when we get downstairs but sit right here.

"[Petitioner]: Now I gotta wait till I get downstairs, then we get downstairs oh, we can't have no cigarette, so I ain't saying shit till I have a cigarette. (Inaudible) I'd be a lot more relaxed and comfortable man if I had a cigarette. That's all I'm asking man, that's all I'm asking.

"Belchamber: We can let you have a cigarette when we're done here and get downstairs but this is a non-smoking building and the county ordinance says we can't allow you to smoke here, even the officers don't smoke in here.

"[Petitioner]: O.K. O.K.

"Belchamber: This is the administration building and the [captain's] right across there.

"[Petitioner]: O.K., O.K., now what we talking about?

"Belchamber: Well, you're a suspect in several robberies.

"[Petitioner]: O.K., uh.

"Belchamber: You want to answer some questions about.

"[Petitioner]: Not without no lawyer man, and not without no cigarette.

"Belchamber: O.K., you don't want to answer any questions though.

"[Petitioner]: Help me out, I'll help you out.

"Belchamber: When I talked to you at the jail you said you'd be willing to come over here and talk to us.

"[Petitioner]: Yea, help me out, I'll help you out. It[']s as simple as that man. I'm not gonna just sit up here and go through all this shit, and you're gonna say o.k., we'll just look you up for 20 years or something like that buy. Give me a cigarette man, that's all I'm asking.

"Belchamber: I can't let you smoke in this room or this building like I said, I told you when we're done here and taking you back to the jail, when we get downstairs, I'll let you stand outside and have a cigarette.

"[Petitioner]: O.K., talk to me, I'm listening.

"Belchamber: O.K., first of all, I want to advise you of your rights, o.k.

"[Petitioner]: That's a good idea.

6

"Belchamber: You have the right to remain silent, anything you say can and will be used against you in a court of law.

"[Petitioner]: So now I'm being arrested now?

"Belchamber: Not at this very moment, no.

"[Petitioner]: O.K., just questioning.

"Belchamber: Yes.

"[Petitioner]: O.K., go for it.

"Belchamber: You have the right to talk to an attorney and have an attorney present before and during questioning. If you cannot afford an attorney one will be appointed free of charge to represent you before and during questioning if you desire. Do you understand each of these rights as I've explained to you Steve?

"[Petitioner]: Yea.

"Belchamber: Having these rights in mind, are you willing to answer some questions and talk to us about these robberies.

"[Petitioner]: Depending on what the questions are an depending on whether I may know about these case[s], O.K.

"Belchamber: So you're willing to answer some questions but not others.

"[Petitioner]: No, I'm saying that . . . I mean I can't answer questions if I don't know the answer right?

"Belchamber: O.K.

"[Petitioner]: O.K., that's all I'm saying."

(Unnecessary capitalization and punctuation omitted; otherwise, this is how the transcript was presented to the trial court.)

Following this exchange,[petitioner] was interviewed and gave answers, including admissions, the prosecution sought to use in the trial. The defense objected based on *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694]. The trial court, after a hearing and a viewing of the entire videotape of the interview, concluded [petitioner] did not intend to invoke his right to counsel. The court stated:

> "You look to the totality of the circumstances here and the totality of the circumstances include a previous statement by [petitioner] that he wanted to

speak, indeed, the officer with [petitioner] was acting on that statement and transporting him over to the interrogation room or the interview room.

"He allegedly, I say allegedly because I do believe it is an equivocal assertion, asserts his right to a lawyer prior to the point in time that he has been advised. And I make that distinction because it's important in a number of the cases whether or not this type of [statement] occurs prior to the advisement versus post advisement . . . .

"It is made in the context of this discussion about a cigarette. What's happened is [petitioner] has asked for a cigarette and the officer says in effect, no, you can't get a cigarette. You can't have a cigarette here. And when you look at the tape, it's clear that [petitioner] is distraught about the action by this officer. And it is immediately thereafter when he says you want to answer some questions[? N]ot without no lawyer, man, and not without no cigarette.

"And the emphasis is on cigarette when you listen to the tape. And then the officer's trying to understand if he wants to answer questions or not, asks whether or not, okay. You don't want to answer my questions though? Question mark. I would note that it is proper to seek a clarification as to whether or not he understands his right and also proper to seek a clarification as to whether or not he is asserting the rights and both of those appear to me to be proper in this instance."

The trial court concluded that, because of [petitioner's] statement at the jail that he wanted to talk to the detectives, the detectives acted appropriately in questioning him about his desire to talk to them even after he mentioned not talking without a lawyer. It therefore denied [petitioner's] motion to suppress the statements he made during the interview.

[Petitioner] asserts on appeal that the statements should have been suppressed because (1) they were made after he invoked his right to counsel and (2) they were involuntary. Neither assertion has merit.

A. Right to Counsel

"To establish a valid waiver of an accused person's right to counsel and to remain silent, the People must show, by a preponderance of the evidence, that the accused voluntarily,

8

knowingly and intelligently waived such rights. (*Colorado v. Connelly* (1986) 479 U.S. 157 [107 S.Ct. 515, 93 L.Ed.2d 473]; *People v. Sims* (1993) 5 Cal.4th 405, 440 [].)  The court determines the validity of the waiver from an evaluation of the totality of the circumstances. (*Miranda v. Arizona, supra*, 384 U.S. at pp. 475-477 [86 S.Ct. at pp. 1628-1629].)" (*In re Bonnie H.* (1997) 56 Cal.App.4th 563, 577.)

"'It is the function of the trial judge to determine whether [petitioner] did in fact knowingly and voluntarily waive the right to remain silent and his right to have the assistance of counsel.  This determination is to be made based on the totality of the circumstances surrounding the interrogation. . . .  The assertion of privilege or its waiver constitutes a question of fact which can only be decided after taking into account the special circumstances of each case. . . .  Where the evidence is in conflict, the trial court's findings in this regard will be accepted by the appellate court unless it is palpably erroneous or entirely unworthy of belief . . . .' [Citations.]  "'[T]he trial court's ruling on a *Miranda* [ ] issue may not be set aside by us unless it is "palpably erroneous."'" [Citation.]'" (*People v. Bolden* (1996) 44 Cal.App.4th 707, 713.)

[Petitioner] argues the detectives violated his right to counsel by questioning after he said, "Not without no lawyer, man."  Taking into consideration the totality of circumstances, [the court disagrees.]

As the trial court noted, [petitioner] made inconsistent statements about whether he wanted to talk to the detectives.  At the jail, he indicated a willingness to go to the Sheriff's Department and talk.  When they arrived, he told the detectives he wanted a cigarette.  Detective Belchamber told him he could not smoke a cigarette in the building.  Immediately after that exchange, the detective asked [petitioner] if he would answer some questions.  He responded: "Not without no lawyer man, and not without no cigarette."

The trial court watched the video of the interview, including this statement concerning counsel, and concluded that it was not an unambiguous invocation of the right to counsel for two reasons.  First, both this statement and [petitioner's] statement at the jail expressing his willingness to talk were made before he was advised of his rights but were in conflict.  And second, from the trial court's viewing of the video, it was apparent that [petitioner] emphasized the cigarette part of the statement, not the lawyer part.

"[A] suspect must *unambiguously* request counsel." (*People v. Crittenden* (1994) 9 Cal.4th 83, 130, emphasis in original.)  There is ample evidence to support the trial court's conclusion that the statement was ambiguous under the circumstances.  The detectives conscientiously informed [petitioner] of his rights after he made the statement (see *ibid*.), and he showed no intent to invoke the

9

right to counsel. Accordingly, [petitioner's] waiver of the right to counsel was valid.

B. Voluntariness

A statement is obtained involuntarily from a defendant when "the accused's abilities to reason or comprehend or resist were in fact so disabled that he was incapable of free or rational choice." (*In re Cameron* (1968) 58 Cal.2d 487, 498.) Coercion is determined by considering the "'totality of the circumstances.'" (*Ibid.*)

"The People bore the burden, by a preponderance of the evidence, of showing that the statements were made voluntarily. [Citation.] Resolving the point requires considering "a mixed question of law and fact that is nevertheless predominantly legal . . . .' [Citation.] Hence '"[o]n appeal, the determination of a trial court as to the ultimate issue of the voluntariness of a confession is reviewed independently. . . . [¶] The trial court's determinations concerning whether coercive police activity was present, whether certain conduct constituted a promise and, if so, whether it operated as an inducement, are apparently subject to independent review as well." [Citation.] However, "the trial court's findings as to the circumstances surrounding the confession-including 'the characteristics of the accused and the details of the interrogation' [citation]–are clearly subject to review for substantial evidence. . . .'" [Citation.]" (*People v. Jones* (1998) 17 Cal.4th 279, 296.)

[Petitioner] asserts the statement was involuntary. He bases this assertion on the weak premise that Detective Belchamber's promise to let him have a cigarette after the interview overcame his will. [The court rejects] this assertion for two reasons. First, Detective Belchamber promised [petitioner] he could have a cigarette *when they finished*, not *if [petitioner] agreed to talk*. The quickest way for [petitioner] to get his desired cigarette was to refuse to talk. It is apparent [petitioner] wanted to talk. [Petitioner's] assertion that he "desperately needed that cigarette so he talked first so he could smoke later" is not supported by a reasonable reading of the record. And second, there is no evidence [petitioner] was so overcome by a craving for a cigarette that he could not think rationally and exercise his free will. We conclude the statement was voluntary and was not induced by a promise that he could have a cigarette.

(People v. Perridon, slip op. at 3-11.)

In Edwards v. Arizona, the United States Supreme Court held that law enforcement officers must immediately cease questioning a suspect who has clearly asserted his right to have counsel present during custodial interrogation. Id., 451 U.S. at 484-85. A suspect

must "unambiguously request counsel," which means that he "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350 (1994).

However, the United States Supreme Court has recognized that "[o]n occasion, an accused's request for counsel may be ambiguous or equivocal." Smith v. Illinois, 469 U.S. 91, 95, 105 S.Ct. 490 (1984). For instance, in Davis, defendant's statement, "Maybe I should talk to a lawyer" was insufficient to constitute an invocation of the right to counsel. Similarly, the Ninth Circuit Court of Appeals has concluded that statements which include the words "might," "maybe," or "perhaps" should generally be deemed ambiguous. Robinson v. Borg, 918 F.2d 1387, 1393-94 (9th Cir.1990) (citing cases). See also Clark v. Murphy, 331 F.3d 1062, 1066 (9th Cir.2003) (defendant's statement "I think I would like to talk to a lawyer" was ambiguous, and therefore the police were not required to cease questioning). The Ninth Circuit has also found requests for counsel to be equivocal when the defendant asks the police whether they think he should get a lawyer. See e.g., United States v. Ogbuehi, 18 F.3d 807, 813 (9th Cir.1994) (defendant's question, "Do I need a lawyer" or "Do you think I need a lawyer" does not "rise to the level of even an equivocal request for an attorney"). Questions that raise uncertainty about whether the suspect actually wants a lawyer are also equivocal assertions of the right to counsel. See e.g., United States v. Younger, 398 F.3d 1179, 1187 (9th Cir.2005) (defendant's statement "[b]ut, excuse me, if I am right, I can have a lawyer present . . . through all this, right?" does not constitute unambiguous invocation of right to counsel).

As noted by the state court, petitioner's statement "Not without no lawyer man, and not without no cigarette," was ambiguous based on the fact that petitioner had willingly offered to accompany Officer Belchamber from the County Jail, where petitioner was being held on a parole violation, to answer questions. The statement at issue arose in the context of petitioner expressing his desire for a cigarette and before Miranda warnings had been given.

11

The trial court viewed the videotape of the statement in open court and noted on the record that petitioner's emphasis was on the cigarette and not on the lawyer. (Augmented Clerk's Transcript "ACT" 1-3.) A review of the interview transcript supports this view; petitioner's focus was on obtaining a cigarette.

Given this context, and petitioner's ambiguous statement, it was reasonable for Officer Belchamber to attempt to clarify whether petitioner wished to answer questions or not. Davis, 512 U.S. at 461. "[A] reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel . . . do[es] not require the cessation of questioning." Id. at 459. Officer Belchamber asked petitioner "O.k., you don't want to answer any questions, though?" (ACT 1.) Petitioner did not refuse to answer questions, but began to negotiate: "Help me out, I'll help you out." (Id.) The officer sought further clarification, noting that petitioner had previously indicated a willingness to talk. Petitioner expressed his concerns about a lengthy incarceration, then said "Give me a cigarette, man, that's all I'm asking." (ACT 2.) Petitioner did not make any further reference to wanting a lawyer.

Shortly after Officer Belchamber confirmed petitioner wished to continue talking to him, Officer Belchamber advised petitioner of his Miranda rights. Indeed, no interrogation or incriminating statements took place until after the Miranda rights were given. Petitioner then waived his Miranda rights. (ACT 2-3.) During the subsequent interview, petitioner admitted to some robberies, but not others. (RT 813-19; 870-83.)

Accordingly, in light of these circumstances, a reasonable police officer would have found petitioner's statement to be ambiguous and sought further clarification, as Officer Belchamber did here. This court finds there was no Miranda violation. The state court's decision was reasonable and analyzed consistent with federal law. This claim should be denied.

To the extent that petitioner contends his confession was coerced or involuntary because the police took advantage of his need for a cigarette, his claim fails as well.

  Any waiver of the Fifth Amendment right to remain silent must be voluntary as well as knowing and intelligent. Colorado v. Spring, 479 U.S. 564, 572 (1987); Moran v. Burbine, 475 U.S. 412, 421 (1986). The waiver must be both "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and knowing in that it "must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Spring, 479 U.S. at 573. Only if the "'totality of the circumstances surrounding the interrogation'" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Moran, 475 U.S. at 421. See also Juan H. v. Allen, 408 F.3d 1262, 1271 (9th Cir. 2005).

  A waiver of one's rights under Miranda "need not be express." United States v. Younger, 398 F.3d 1179, 1185 (9th Cir. 2005). However, there is a "presumption against waiver." Id. In soliciting a waiver of Miranda rights, "police officers need not use a waiver form nor ask explicitly whether a defendant intends to waive his or her rights." Id.; United States v. Cazares, 121 F.3d 1241, 1244 (9th Cir.1997). Waiver can be inferred "from the actions and words of the person interrogated." North Carolina v. Butler, 441 U.S. 369, 373 (1979). However, "[i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Miranda, 384 U.S. at 475.

  As noted above, the state court rejected this claim based on two reasons. First, Officer Belchamber informed petitioner he would get a cigarette when they were done, not contingent on whether petitioner talked to the police. This fact supports an inference that petitioner's statement was not induced by the promise of a cigarette. As the state court pointed out, petitioner would have gotten a cigarette sooner had he refused to talk, ending the interview
/////

quickly. Second, the state court found there was no evidence petitioner's will was overborne by his craving for a cigarette.

A review of the interview transcript confirms the state court's view of the facts. (ACT at 1-3.) Petitioner's willingness to speak with the police is confirmed through Officer Belchamber's clarification of petitioner's wishes as well as petitioner's obvious desire to negotiate with him. (Id.) The facts do not demonstrate that Officer Belchamber elicited petitioner's statements with the promise of a cigarette, or that petitioner's will was overcome by his desire for a cigarette.

Where there is no evidence of police coercion, the confession is voluntary. Colorado v. Connelly, 479 U.S. 157, 170 (1986)(mentally ill defendant's confession to police officer was voluntary because no evidence of police coercion); Clabourne v. Lewis, 64 F.3d 1373 (9th Cir. 1995)(confession was voluntary despite defendant's intoxication on thorazine because no evidence of police coercion); United States v. Kelley, 953 F.2d 562, 565 (9th Cir. 1992) (in absence of coercive police conduct, heroin withdrawal insufficient to render statements involuntary).

The state court properly evaluated this claim under the totality of the circumstances and its rejection of this claim was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent. Petitioner's claim for relief should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's amended application for writ of habeas corpus be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within ten days after these findings and recommendations are served, any party may file and serve written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to

file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 25, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

001;perr1123.157